UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CELESTE WENEGIEME,

                           Plaintiff,

                   -against-

U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE,
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, LASALLE BANK NATIONAL
ASSOCIATION, and BANK OF AMERICA NATIONAL
ASSOCIATION,

                          Defendants.

**OPINION AND ORDER**

16 Civ. 6548 (ER)

---

## I. INTRODUCTION

       Celeste Wenegieme ("Plaintiff") brings this action against U.S. Bank National

Association ("U.S. Bank"), Mortgage Electronic Registration Systems ("MERS"), LaSalle Bank

National Association ("LaSalle"), and Bank of America National Association ("BofA")

(collectively, the "Defendants"), alleging fraud, trespass, and failure to provide a notice of sale

arising from the foreclosure of her home and related litigation. Plaintiff has previously asserted

the same or similar allegations, and sought the same or similar relief before three courts going

back to July 2014. She has been unsuccessful in each previous attempt. Before the Court is U.S.

Bank and MERS's (the "Moving Defendants") motion to dismiss the instant Complaint pursuant

to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).[1] For the reasons stated below, the

motion to dismiss is GRANTED.

---

[1] BofA was served on August 25, 2016. Doc. 7. LaSalle was served on September 1, 2016. Doc. 9. However,
neither party has made an appearance.

## II.  FACTUAL BACKGROUND[2]

On July 5, 2006, Alleyne Sylvester, who is not involved in this action, executed a

mortgage for a multi-unit residence at 1037 Elder Avenue, Bronx, New York (the "Elder Ave.

Property").  Noren Declaration in Support of Defendants' Motion to Dismiss ("Noren Decl.")

(Doc. 20), Ex. 1 at 7.[3]  The mortgage originally identified SouthStar Funding, LLC as the lender,

and MERS as the "nominee" for the lender.[4]  *Id.* at 8.  Sylvester transferred her interest in the

Elder Ave. Property to Plaintiff on March 15, 2007.  *Id.*, Ex. 2 at 2.  The mortgage was then

assigned by MERS (as nominee for SouthStar Funding, LLC) to LaSalle on March 5, 2008.  *Id.*,

Ex. 3 at 50–52.  BofA became the successor by merger with LaSalle on October 22, 2009.  *Id.* at

56.

### A.  The Foreclosure Action

On October 28, 2009, BofA began the process of foreclosing on the Elder Ave. Property

by filing a Notice of Pendency in Bronx County Supreme Court under Index Number

382417/2009 against Plaintiff, Sylvester, and several others, including MERS (the "Foreclosure

---

[2] The following facts are drawn from the allegations in the Complaint, the documents attached thereto, and the declarations, memoranda, and exhibits submitted in connection with the motion to dismiss.  For purposes of the 12(b)(1) motion challenging the district court's subject matter jurisdiction, evidence outside of the pleadings may be considered by the Court to resolve the disputed jurisdictional fact issues.  *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  Further, "[w]hen a plaintiff is proceeding *pro se*, the Court also may rely on any opposition papers in assessing the legal sufficiency of the plaintiff's claims."  *Shipman v. N.Y.S. Office of Persons with Developmental Disabilities*, No. 11 Civ. 2780 (GBD) (FM), 2012 WL 897790, at *4 (S.D.N.Y. Mar. 13, 2012), adopted in full, 2012 WL 1034903 (S.D.N.Y. Mar. 26, 2012).  The Court also takes judicial notice of the documents filed in Plaintiff's previous litigation related to the foreclosure of her property.  *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) ("[C]ourts routinely take judicial notice of documents filed in other courts, again not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings.").

[3] All page numbers in citations to Noren. Decl. Exhibits refer to the ECF generated page numbers.

[4] Defendants aver that MERS is listed as the mortgagee strictly for recording purposes.  Noren. Decl., Ex. 1 at 8. MERS was established to track mortgage interests.  *See Knox v. Countrywide Bank*, 4 F. Supp. 3d 499, 505 (E.D.N.Y. 2014) (citing *In re MERSCORP, Inc. v. Romaine*, 861 N.E.2d 81, 83 (N.Y. 2006)).  Mortgage lenders pay MERS a fee for the service and also appoint MERS as their "common agent."  *Id.*  The mortgage interest can then be transferred among lenders who use MERS, without the lender having to record the transfer; rather, the transfers are internally tracked by MERS.  *Id.*

Action").[5]  *Id.*, Ex. 3, at 2–18; *see id.* Ex. 4.  Plaintiff was served on November 16, 2009.  *See id.*, Ex. 4.  On September 17, 2010, BofA's unopposed motion for summary judgment was granted.[6] *See id.*, Ex. 6.  The mortgage at issue was assigned to U.S. Bank on February 14, 2012, *id.*, Ex. 8 at 113–114, and U.S. Bank replaced BofA as plaintiff in the Foreclosure Action.  *Id.*, Ex. 7 at 5–6.  On August 8, 2013, U.S. Bank's unopposed motion for judgment of foreclosure and sale (the "Foreclosure Judgment") was granted.  *See id.* at 3–14.

Almost one year later, by an order to show cause filed on July 24, 2014, Plaintiff moved to vacate the Foreclosure Judgment, and to stay the sale scheduled for July 28, 2014.[7]  *See id.*, Ex. 8.  Plaintiff argued that:  (1) the documentary evidence demonstrated that the assignment of the mortgage from MERS to LaSalle, and then to BofA, and finally to U.S. Bank was fraudulent, thus the mortgage was not U.S. Bank property; (2) because U.S. Bank was not the owner of the mortgage, it lacked standing to foreclose and could not state a claim for foreclosure; and (3) the court lacked subject matter jurisdiction.  *See id.* at 8–30.  The motion was denied.[8]

---

[5] The additional defendants were:  (1) the City of New York by Environmental Control Board; (2) the City of New York by Parking Violations Bureau; (3) the City of New York by Transit Adjudication Bureau; and (4) unnamed individuals with interest in the property.  Noren Decl., Ex. 3, at 2.

[6] Neither party has submitted a copy of the motion, only the order granting it.  The order does not detail the basis for the motion, nor does it discuss the merits of any claims or arguments.

[7] It appears that the sale was originally scheduled for September 23, 2013.  Noren Decl., Ex. 8 at 9.  However, Plaintiff claimed that she was not given notice of the sale.  *Id.*  Although no record of the motion was submitted to this Court, it appears that Plaintiff "filed an order to show cause and obtained a stay of the first sale . . . and argument was scheduled for May 12, 2014."  *Id.*  Because Plaintiff's counsel failed to appear, the order was denied and the stay was vacated.  *Id.* at 8–9.  The sale was rescheduled for July 28, 2014.  *Id.* at 9.

[8] It is not clear when the motion was denied.  Defendants apparently mistakenly cite to Exhibit 9 as "[a] copy of the Order denying Wenegieme's Motion to Stay in the Foreclosure Action."  Defendants' Memorandum of Law in Support of Motion to Dismiss ("Def. Memo.") (Doc. 21) at 3.  This exhibit, however, is dated prior to Plaintiff's submission of the motion.  Noren Decl., Ex. 9 at 2.  According to the online docket, the motion was denied on December 22, 2015.  *See* text accompanying docket entry for Motion Number 6, *Bank of America, N.A. v. Sylvester*, Index Number 382417/2009 (Sup. Ct., Bronx Cty.).

**B.  The State Action**

Meanwhile, on July 23, 2014, Plaintiff separately commenced an action in Bronx County Supreme Court, under Index Number 303957/2014 against U.S. Bank, U.S. Bank's attorneys in the Foreclsoure Action, the loan servicer, and the referee in the underlying Foreclosure Action (the "State Action").  *See id.*, Ex. 10 at 7–9.  In her complaint, Plaintiff alleged that she did not owe money to any of the defendants and that defendants trespassed on her property.  *Id.* at 8.  Plaintiff also noted that she received a notice that the Elder Ave. Property was to be sold on July 28, 2014.  *Id.* at 7.  Plaintiff filed an order to show cause, seeking a temporary restraining order to prevent the sale of the Elder Ave. Property.  *See id.* at 2–3.  The motion for a temporary restraining order was denied on July 28, 2014.  *See* text accompanying docket entry for Motion Number 1, *Wenegieme v. U.S. Bank Nat'l Ass'n*, Index No. 303957/2014 (Sup. Ct., Bronx Cty.).  However, the Elder Ave. Property was not sold at this time.

U.S. Bank[9] moved to dismiss for failure to state a claim, collateral estoppel, and a defense founded on documentary evidence.  *See* Noren Decl., Ex. 11 at 2–13.  On September 17, 2014, Justice Suarez dismissed the action against all defendants for Plaintiff's failure to properly serve the complaint.[10]  *See id.*, Ex. 12.  Justice Suarez further noted that Plaintiff failed to state a claim for trespass because she did not allege that the defendants physically entered her property.  *Id.* at 6.  Even if she had, "such entry must be unauthorized or unjustified . . . and here entitlement to foreclosure and sale exists pursuant to undisturbed orders of the court."  *Id.*  Justice Suarez also noted that collateral estoppel barred Plaintiff from relitigating the Foreclosure Judgment, because:

---

[9] The motion to dismiss was made on behalf of U.S. Bank and "Ocwen Loan Servicing."  Noren Decl., Ex. 11 at 2. MERS, a third party in the State Action, filed a separate motion which was denied.  *Id.*, Ex. 12 at 6.

[10] In his order, Justice Suarez noted that Plaintiff filed responsive papers on August 22, 2014.  However, neither party has provided a copy of those documents.  *Id.* at 3.

this court has already denied plaintiff's two applications to stay the foreclosure sale, in part because plaintiff appeared in the underlying foreclosure action by counsel and appeared to have had a full and fair opportunity to contest plaintiff's entitlement to relief therein. The mortgagee sought summary judgment on notice to Wenegieme who could have and should have interposed her arguments at the time of an in the context of the summary judgment motion or the subsequent motion practice.

*Id*.

### C. The First Federal Action

On August 13, 2014, approximately three weeks after she filed the motion to vacate the Foreclosure Judgment and commenced the State Action, Plaintiff filed a complaint in the District Court for the Southern District of New York, against the same defendants as in the State Action, and MERS, alleging violations of her "15[th] Amendment 'Due Process'" rights, harassment, and trespass ("the First Federal Action"). *Id.*, Ex. 13 at 2–5. Plaintiff also filed an order to show cause for a temporary restraining order and preliminary injunction, seeking to enjoin the sale of the Elder Ave. Property. *See id.* at 15–19. The sale previously scheduled for July 28, 2014 had been postponed until August 18, 2014. *Id.* at 6. Plaintiff claimed that she "was not served any summon[s]/complaint to foreclose," that U.S. Bank used "a defunct index [number]," and that U.S. Bank did not own the mortgage, note, or assignment. *Id.* at 18–19.

On August 14, 2014, Judge Oetken denied the motion for a temporary restraining order and preliminary injunction because Plaintiff failed to allege complete diversity of citizenship and because the *Rooker-Feldman* doctrine prevented the court from exercising jurisdiction over Plaintiff's claims. *Id.*, Ex. 14 at 2–3. Specifically, Judge Oetken ruled that the court was not able to review the judgments of state courts, which in this case included the "judgment of foreclosure issued in New York State Supreme Court for Bronx County." *Id.* at 3.

Judge Oetken also dismissed *sua sponte* the harassment and trespass claims because Plaintiff failed to "plead any facts . . . beyond the bare statement of the words themselves," but granted Plaintiff leave to file an amended complaint. *Id.* at 4.[11] Judge Oetken did not address Plaintiff's due process claim. On April 14, 2015, Judge Oetken directed the Clerk to close Plaintiff's case because she had not filed an amended complaint. *See* Order, *Wenegieme v. U.S. Bank Nat'l Ass'n*, No. 14 Civ. 6448 (S.D.N.Y. Apr. 14, 2015), ECF. No. 12. Presumably, the sale scheduled for August 18, 2014 was postponed, because Plaintiff now alleges that the Elder Ave. Property was scheduled to be sold by auction on August 15, 2016. Compl., Ex. B. As of the date of this order, neither party has advised the Court whether the property was actually sold in August of 2016.

### D. The Instant Federal Action

Plaintiff filed the instant Complaint on August 18, 2016, alleging several claims against U.S. Bank, MERS, LaSalle, and BofA. *See* Complaint ("Compl.") (Doc. 1).[12] First, Plaintiff claims that Defendants committed fraud by presenting defective assignments to the state court in the original Foreclosure Action, which were used to secure the Foreclosure Judgment. *Id.* at 3. In her Memorandum in Opposition to Defendants' Motion to Dismiss ("Pl. Opp." or "Response") (Doc. 22), Plaintiff further explains the basis for her fraud claim. The crux of her argument is that after conducting a "[c]ertified forensic audit" of the mortgage on November 4, 2016, "it

---

[11] Judge Oetken noted that state law tort claims, could, if well pled, be asserted in federal court against U.S. Bank and Ocwen Loan Servicing, as they were diverse parties. *Id.*, Ex. 14 at 4. MERS was not diverse because Plaintiff listed MERS as having a New York address. *Id.*, Ex. 13 at 17. However, in the instant action, Plaintiff lists MERS as having a Michigan address. Compl. at 2.

[12] All page numbers in citations to the Complaint refer to the ECF generated page numbers.

became evident" that U.S. Bank[13] did not own the mortgage to the Elder Ave. Property.[14]  Pl.

Opp. at 5; *see also* Pl. Opp. Ex. 1 at 63.  Because it did not own the mortgage, Plaintiff argues

that U.S. Bank "lacked standing to bring the foreclosure action in the first place."  *Id.* at 7.

Plaintiff, therefore, seeks "one million, five hundred" dollars in damages for the value of the

Elder Ave. Property.  Compl. at 4.

Second, Plaintiff alleges that the Defendants trespassed on the Elder Ave. Property on

August 14, 2016.  *See* Compl. at 3.  It is unclear exactly which individuals Plaintiff claims

trespassed on her property.  In her Complaint, she claims that "investors stormed the property"

and harassed her and her family.  Compl. at 3 ("My whole family suffered from harassment, [and]

trespassing . . . when investors stormed the property on [August 14, 2016].").  However, in her

Response, Plaintiff explains that it was "representatives from U.S. Bank," investors, and

contractors who entered the Elder Ave. Property.  Pl. Opp. at 3–4.  Plaintiff alleges that these

individuals forcibly entered the Elder Ave. Property, destroyed the basement and front doors,

changed locks on both doors, made repairs in the basement, and removed several items, which

"traumatiz[ed] all the tenants."  *Id.* at 4.  At no time does Plaintiff allege that MERS, LaSalle, or

BofA entered her property.

Third, Plaintiff claims that her civil rights were violated when Defendants failed to

provide legal notice that the property was going to be sold at public auction on August 15, 2016.

Compl. at 3.  Plaintiff claims that she first learned of the sale on August 14, 2016, when she was

---

[13] At certain times Plaintiff refers to the Defendants collectively (as one unit), and at other times she assigns conduct specifically to U.S. Bank.  In her Response, Plaintiff refers to U.S. Bank specifically as the entity responsible for presenting fraudulent ownership documents in order to secure the Foreclosure Judgment.  Pl. Opp. at 7.  In her motion to vacate the Foreclosure Judgment, Plaintiff argued that MERS fraudulently assigned the mortgage interest to U.S. Bank.  Noren Decl., Ex. 8 at 21–23.  Plaintiff does not appear to allege that BofA and LaSalle also presented fraudulent documents to the court in the Foreclosure Action, and because they have not moved to dismiss, it is difficult to determine exactly what role they played.

[14] As noted above, Plaintiff made the same argument in the Foreclosure Action in July 2014, when she sought to vacate the Foreclosure Judgment.

approached by prospective buyers who requested to inspect the property prior to the auction scheduled for the next day.  *Id.*  She alleges that Defendants humiliated her by scheduling a public sale of the Elder Ave. Property.  *Id.*

## III.  PROCEDURAL BACKGROUND

Although Plaintiff was briefly represented by counsel, she is now proceeding *pro se*.  *See* Docs. 11, 12, 14, 16, 17.  At a pre-motion conference before this Court on November 15, 2016, the moving Defendants were granted leave to file a motion to dismiss, which they filed on December 1, 2016.  Doc. 19.  Plaintiff submitted a response on December 16, 2016.  Doc. 22. Moving Defendants filed their reply on December 27, 2016.  Doc. 23.  Plaintiff filed a sur reply on December 29, 2016.  Doc. 26.

## IV.  LEGAL STANDARDS

### A.  12(b)(1) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case.  Fed. R. Civ. P. 12(b)(1).  The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists. *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citing *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, evidence outside of the pleadings may be considered by the court to resolve the disputed jurisdictional fact issues.  *Id.* (citing *Makarova*, 201 F.3d at 113).  When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true, but does not draw inferences

from the complaint favorable to the plaintiff.  *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004).

Where, as here, a party also seeks dismissal on Rule 12(b)(6) grounds, the court must consider the Rule 12(b)(1) motion first.  *Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 820 F. Supp. 2d 490, 499 (S.D.N.Y. 2011), *aff'd sub nom. Baldessarre ex rel. Baldessarre v. Monroe-Woodbury Cent. Sch. Dist.*, 496 F. App'x 131 (2d Cir. 2012).

### B.  12(b)(6) Motion to Dismiss

On a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor.  *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008).  However, this requirement does not apply to legal conclusions, bare assertions or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In order to satisfy the pleading standard set forth in Rule 8, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face.  *Id.* at 678 (citing *Twombly*, 550 U.S. at 570).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*  Accordingly, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

Though a plaintiff may plead facts alleged upon information and belief, "where the belief is based on factual information that makes the inference of culpability plausible," *Arista Records,*

*LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010), such allegations must be "'accompanied by a statement of the facts upon which the belief is founded.'" *Navarra v. Marlborough Gallery, Inc.*, 820 F. Supp. 2d 477, 485 (S.D.N.Y. 2011) (quoting *Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 385 (S.D.N.Y. 2006)); *see also Williams v. Calderoni*, No. 11 Civ. 3020 (CM), 2012 WL 691832, at *7–8 (S.D.N.Y. Mar. 1, 2012) (finding pleadings on information and belief insufficient where plaintiff pointed to no information that would render his statements anything more than speculative claims or conclusory assertions). A complaint that "tenders naked assertions devoid of further factual enhancement" will not survive a motion to dismiss under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted) (brackets omitted).

### C. Pro Se Status

In the case of a *pro se* plaintiff, the Court is obligated to construe the complaint liberally, *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011), and to interpret the claims as raising the strongest arguments that they suggest. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citing *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010)). Because of Plaintiff's *pro se* status, it is appropriate to consider factual allegations in her opposition papers as supplementing the Complaint, at least to the extent they are consistent with the allegations in the Complaint. See *Shipman v. N.Y.S. Office of Persons with Developmental Disabilities*, No. 11 Civ. 2780 (GBD) (FM), 2012 WL 897790, at *4 (S.D.N.Y. Mar. 13, 2012), adopted in full, 2012 WL 1034903 (S.D.N.Y. Mar. 26, 2012).

**V. DISCUSSION**

**A. *Rooker-Feldman* Doctrine**

Moving Defendants argue that Plaintiff's action is barred by the *Rooker-Feldman* doctrine because Plaintiff's claims are essentially a request to reverse the findings and conclusions of the New York State court in the Foreclosure and State Actions. Defendants' Memorandum of Law in Support of Motion to Dismiss ("Def. Memo.") (Doc. 21) at 4. The *Rooker-Feldman* doctrine stands for "the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). It precludes cases brought in lower federal courts "by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The Second Circuit has articulated four requirements for the application of the *Rooker-Feldman* doctrine:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced—*i.e.*, *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Hoblock*, 422 F.3d at 85 (brackets, quotation marks and citations omitted). The first and fourth requirements are procedural, while the second and third are substantive. *Id.*

**1. Procedural Requirements**

Here, the Court finds that the procedural requirements are met. First, Plaintiff lost in the Foreclosure Action when the court issued the Foreclosure Judgment, and again when the court denied Plaintiff's motion to vacate it. *Francis v. Nichols*, No. 16 Civ. 1848 (CS), 2017 WL

1064719, at *4 (S.D.N.Y. Mar. 21, 2017) (finding that this procedural prong was met because the state court "entered a judgment of foreclosure and sale . . . [and] denied [plaintiff's] motion to vacate that foreclosure judgment").  Plaintiff also lost in the State Action when defendants' motion to dismiss was granted.  Second, the Foreclosure Judgment was issued on August 8, 2013, and Plaintiff's motion to vacate that judgment was denied on December 22, 2015.  Plaintiff's claims were dismissed in the State Action on September 17, 2014.  Because the instant district court proceeding commenced on August 18, 2016, all of the state court judgments were rendered prior to this action.  Therefore, the two procedural prongs are met.

### 2.  Substantive Requirements

The two substantive requirements that must be satisfied for the *Rooker-Feldman* doctrine to apply are that:  (1) the plaintiff must complain of injuries caused by the state court judgment, and (2) the plaintiff must invite district court review and rejection of that judgment.  Accordingly, the doctrine does not bar a plaintiff from raising federal claims based on the same facts as a prior state case, so long as the plaintiff complains of an injury independent of an adverse state court decision.  See *Exxon*, 544 U.S. at 293 (internal quotation marks omitted) (noting that *Rooker-Feldman* does not bar independent claims, even if those claims "den[y] a legal conclusion that a state court has reached in a case to which [the plaintiff] was a party"); *Hoblock*, 422 F.3d at 86 (noting that *Rooker-Feldman* does not bar independent claims, even if those claims "involve the identical subject matter and parties as previous state-court suits").  However, as discussed below, such claims may still be barred under the doctrine of *res judicata*.  *Mareno v. Dime Sav. Bank of N.Y.*, 421 F. Supp. 2d 722, 726 (S.D.N.Y. 2006).

As a preliminary matter, Moving Defendants argue that the *Rooker-Feldman* doctrine bars the entire action, rather than any specific claim.  Def. Memo. at 6.  They support their

argument by citing to Judge Oetken's order dismissing *sua sponte* Plaintiff's claims in the First

Federal Action. *See id.* However, Judge Oetken held that *Rooker-Feldman* barred the court

from adjudicating Plaintiff's request for a temporary restraining order to prevent the sale of her

property; Judge Oetken did not hold that all of Plaintiff's claims were barred by *Rooker-*

*Feldman*.[15] *See* Noren Delc., Ex. 14. Moreover, while Judge Oetken dismissed Plaintiffs

trespass and harassment claims for failure to "plead any facts regarding" the claims, he granted

Plaintiff leave to file an amended complaint to replead those claims, explicitly stating that "any

state law tort claims (such as harassment and trespass) against [diverse defendants] may be

asserted in federal court if well pleaded." *Id.* The Court must therefore consider whether each

specific claim is substantively barred by the *Rooker-Feldman* doctrine.

### a. Fraud

Plaintiff alleges that Defendants presented fraudulent documents in the Foreclosure

Action, which led to the issuance of the Foreclosure Judgment and the loss of ownership to her

home. The loss of her home is an injury directly caused by the state court judgment. Plaintiff

invites rejection of the state court judgments by requesting that this Court reverse the Foreclosure

Judgment, the order granting U.S. Bank's motion for summary judgment, and the order granting

defendants' motion to dismiss in the State Action. This is barred under *Rooker-Feldman*. *See*

*Vossbrinck v. Accredited Home Lenders*, 773 F.3d 423, 427 (2d Cir. 2014) ("To the extent

Vossbrinck asks the federal court to grant him title to his property because the foreclosure

judgment was obtained fraudulently, *Rooker-Feldman* bars Vossbrinck's claim."); *Campbell v.*

*Bank of N.Y. Mellon Trust Co., N.A.*, No. 11 Civ. 1588 (CS) (PED), 2012 WL 2952852, at *7

---

[15] Judge Oetken also ruled on this issue in another case that Plaintiff brought before him, holding that *Rooker-Feldman* did not bar Plaintiff's claims seeking "money damages against [d]efendants for fraudulently prosecuting the foreclosure action and inflicting emotional distress." *Sylvester v. Bayview Loan Servicing LLC*, No. 15 Civ. 1736 (JPO), 2016 WL 3566234, at *6 (S.D.N.Y. June 24, 2016).

(S.D.N.Y. May 8, 2012), adopted in full, 2012 WL 2953967, at *1 (S.D.N.Y. July 18, 2012) (citation omitted) ("Courts in this Circuit have consistently held that any attack on a judgment of foreclosure is clearly barred by the *Rooker-Feldman* doctrine.").

Plaintiff also seeks damages equivalent to the value of the Elder Ave. Property and, construing Plaintiff's Complaint liberally, she seeks damages for the emotional distress she suffered from the fraud. *See* Compl. at 3–4. Second Circuit case law holds that *Rooker-Feldman* does not bar claims that "seek damages from [d]efendants for injuries [a plaintiff] suffered from their alleged fraud, the adjudication of which does not require the federal court to sit in review of the state court judgment." *Vossbrinck*, 773 F.3d at 427; *see also Worthy-Pugh v. Deutsche Bank Nat'l Trust Co.*, 664 F. App'x 20, 22 (2d Cir. 2016) ("The *Rooker-Feldman* doctrine does not prevent a district court from reviewing a claim for damages stemming from an allegedly fraudulent foreclosure judgment, because the district court can determine damages liability without reviewing the propriety of the state court judgment."). In *Anctil v. Ally Financial, Inc.*, plaintiff alleged that the defendants used fraudulent documents to procure a foreclosure judgment. *Anctil v. Ally Financial, Inc.*, 998 F. Supp. 2d 127, 132 (S.D.N.Y. 2014), *rev'd in part sub nom. Babb v. Capitalsource, Inc.*, 558 F. App'x 66 (2d Cir. 2015). Plaintiffs sought "the liquidated value of the wrongful loss of their homes." *Id.* at 136. The district court found that *Rooker-Feldman* applied to plaintiff's claims, but the Second Circuit reversed, holding that plaintiff sought "damages for injuries suffered as a result of defendants' alleged fraud and [did] not attempt to reverse or undo a state court judgment." *Babb*, 558 F. App'x at 68. Similarly, here, Plaintiff seeks damages for the value of her property for the alleged fraudulent representations made by the Defendants during the Foreclosure Action, and thus *Rooker-Feldman* does not bar the Court from exercising its jurisdiction. The same reasoning applies to her claim for damages

due to emotional distress. *See Goddard v. Citibank, NA*, No. 04 Civ. 5317 (NGG) (LB), 2006 WL 842925, at *6 (E.D.N.Y. Mar. 27, 2006) (holding that Plaintiff's allegations of intentional infliction of emotional distress due to fraud in the underlying judgment of foreclosure were independent from the state court judgment and thus *Rooker-Feldman* did not apply).

Therefore, *Rooker-Feldman* bars Plaintiff's fraud claim with respect to her request for reversal of judgments entered in the Foreclosure and State Actions, but does not bar Plaintiff's request for damages resulting from Defendants' fraud.

### b. Trespass

Further, *Rooker-Feldman* does not bar this Court from exercising jurisdiction over Plaintiff's claim that she is entitled to damages for trespass. Injuries sustained from the alleged trespass that occurred on August 14, 2016—which, interpreting the Complaint liberally, include emotional distress, harassment, and property damage, *see* Compl. at 3—were not caused by any state court judgment, but rather by U.S. Bank's independent actions. Further, Plaintiff does not invite this Court to reject a state court judgment because she seeks damages, not reversal of any state court decision. *See Charles v. Levitt*, No. 15 Civ. 9758 (PAE), 2016 WL 3982514, at *4 (S.D.N.Y. July 21, 2016) ("[W]here a plaintiff alleges damages directly caused by defendants' misconduct—*not* by the state court judgment which the misconduct allegedly produced—*Rooker-Feldman* does not bar that claim.").

### c. Failure to provide notice

Similarly, *Rooker-Feldman* does not bar this Court from exercising jurisdiction over Plaintiff's improper notice claim. Plaintiff's injuries stemming from Defendants' alleged failure to provide proper notice of the August 15, 2016 sale were not caused by any judgment in the Foreclosure Action, but rather by Defendants' independent subsequent actions (or lack thereof).

Additionally, this claim does not require the Court to reject any state court judgments because Plaintiff seeks damages, not reversal of any state court decision.  *See id.*

* * *

Therefore, *Rooker-Feldman* precludes the Court from exercising jurisdiction over Plaintiff's claim for reversal of the judgments in the Foreclosure and State Actions, but does not preclude the Court from exercising jurisdiction over Plaintiff's claim for damages due to Defendants' fraud, trespass, or failure to provide notice of the foreclosure sale.  Accordingly, Moving Defendants' motion is GRANTED with respect to Plaintiff's request for reversal of the state court judgments.  Further, because *Rooker-Feldman* concerns the Court's subject matter jurisdiction, the Court may address it *sua sponte* with respect to the non-moving Defendants.[16] *See Voltaire v. Westchester Cty. Dep't of Soc. Servs.*, No. 11 Civ. 8876 (CS), 2016 WL 4540837, at *9 n.16 (S.D.N.Y. Aug. 29, 2016).  Accordingly, the Court *sua sponte* dismisses the fraud claim with respect to Plaintiff's request for reversal of the state court judgments against LaSalle and BofA.

### B.  Collateral Estoppel

Even if Plaintiff's claims are not barred by *Rooker-Feldman*, they "could, of course, be barred by ordinary preclusion principles."  *Hoblock*, 422 F.3d at 88 n.6.  Moving Defendants argue that Plaintiff's claims challenging the Foreclosure Judgment and trespass are also barred by the doctrine of collateral estoppel, or issue preclusion, because they were already litigated and decided in the Foreclosure, State, and First Federal Actions.  Moving Defendants assert that the three previous civil suits all dealt with the judicial determination of U.S. Bank and Plaintiff's

---

[16] MERS, BofA, and U.S. Bank were all parties in the Foreclosure Action.  Although LaSalle was not a party in the Foreclosure Action, "the *Rooker-Feldman* doctrine does not require that the federal-court defendant have been a party in the prior state court proceeding."  *Best v. Bank of America, N.A.*, No. 14 Civ. 6546 (JG) (LB), 2015 WL 5124463, at *3 (E.D.N.Y. Sept. 1, 2015).

rights with respect to the Elder Ave. Property.  Def. Memo. at 7.  The Court agrees, and finds that collateral estoppel bars Plaintiff's fraud and trespass claims.

"The doctrine of collateral estoppel, a narrower species of *res judicata*, precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same." *Ryan v. New York Tel. Co.*, 467 N.E.2d 487, 490 (N.Y. 1984). Under New York law, collateral estoppel applies when:  (1) an issue identified in the present action was necessarily "decided in the prior action and is decisive of the present action and (2) there [was] a full and fair opportunity to contest the decision now said to be controlling." *Bland v. New York*, 263 F. Supp. 2d 526, 551 (E.D.N.Y. 2003) (internal quotation marks omitted) (quoting *Schwartz v. Public Adm'r of Bronx Cty.*, 246 N.E.2d 725, 729 (N.Y. 1969))

With regards to identification and identicality of the issue, "the issue must have been material to the first action or proceeding and essential to the decision rendered therein . . . and it must be the point actually to be determined in the second action or proceeding such that a different judgment in the second would destroy or impair the rights or interests established in the first." *Linares v. City of White Plains*, 773 F. Supp. 559, 563 (S.D.N.Y. 1991) (internal quotations omitted) (quoting *Ryan*, 467 N.E.2d at 487).  "The parties asserting issue preclusion . . . bear the burden of showing that the identical issue was previously decided." *Graham v. Select Portfolio Servicing, Inc.*, 156 F. Supp. 3d 491, 506 (S.D.N.Y. 2016).

With regards to the opportunity to contest the controlling decision, under New York Law there is no formulaic test for determining whether a litigant had a full and fair opportunity to litigate in a prior proceeding.  *See Pack v. Artuz*, 348 F. Supp. 2d 63, 75 (S.D.N.Y. 2004).  To the contrary, the analysis is fluid, rooted in fairness, and turns on the specific facts and

characteristics of each case. *See id.* "The basic concern is one of fairness," and "[i]n testing the fairness of the earlier litigation, all circumstances must be evaluated." *Id.* (internal quotation marks and citations omitted). "[T]he plaintiff bears the burden of showing the absence of a full and fair opportunity to litigate the issue in the prior proceeding." *Graham*, 156 F. Supp. 3d at 506.

### 1. Fraud

The Court finds that Plaintiff is precluded from relitigating the entirety of her fraud claim under the doctrine of collateral estoppel. Here, Plaintiff alleges that Defendants used fraudulent mortgage documents to prove that U.S. Bank had standing to secure the Foreclosure Judgment on the Elder Ave. Property. Pl. Opp. at 7–8. Whether U.S. Bank had standing was necessarily decided in the Foreclosure Action when the court issued a judgment of foreclosure and sale. *See Graham*, 156 F. Supp. 3d at 506 ("[I]t is clear that the issue of standing was necessarily decided by the state court because without deciding that [the bank] had standing, the foreclosure action could not have proceeded."). Moreover, the court in the Foreclosure Action denied Plaintiff's motion to vacate the Foreclosure Judgment, in which she specifically argued that the mortgage assignments were fraudulent. *Francis*, 2017 WL 1064719, at *8 ("[I]n entering the foreclosure judgment and denying [p]laintiff's motion to vacate that judgment, the state court necessarily found that [the bank] had standing to pursue foreclosure."). To now hold that the documents presented in the Foreclosure Action were fraudulent would destroy or impair the rights or interests established in that previous action, *i.e.*, it would mean that court in the Foreclosure Action incorrectly found that U.S. Bank had standing, incorrectly entered the Foreclosure Judgment in its favor, and incorrectly denied Plaintiff's motion to vacate. Therefore, Moving

Defendants have met their burden of showing that an issue identical to the one in this action was previously decided.

Further, Plaintiff has not shown that she lacked "a full and fair opportunity to contest the decision." *Bland*, 263 F. Supp. 2d at 551. In fact, Plaintiff contested the Foreclosure Judgment when she moved, through counsel, to vacate it. In her motion to vacate, she made the same arguments regarding fraudulent documents and standing as she does here. Noren Decl., Ex. 8 at 23 ("[U.S. Bank] lacks standing to foreclose on the grounds MERS was never in title to or the holder of the subject Note and thus, could not assign the Note to [U.S. Bank]."). Additionally, in the subsequent State Action, Justice Suarez found that collateral estoppel precluded relitigating challenges to the Foreclosure Judgment because the "court had already denied Plaintiff's two applications to stay the foreclosure sale, in part because plaintiff appeared in the underlying foreclosure action by counsel and appeared to have had a full and fair opportunity to contest plaintiff's entitlement to relief therein." *Id.*, Ex. 12 at 6.[17] Therefore, Plaintiff is precluded from relitigating the fraud claims against Moving Defendants under the doctrine of collateral estoppel.

### 2. Trespass

Collateral estoppel precludes the trespass claim. Moving Defendants argue that Plaintiff's trespass claim was already adjudicated and dismissed in the State Action and thus should be precluded here. Def. Memo. at 7. In the State Action, Justice Suarez held that Plaintiff failed to state a claim for trespass because she did not allege that the defendants physically entered her property. Noren Decl., Ex. 12 at 6. He went on to note that even if she

---

[17] When collateral estoppel is asserted defensively, as it is here, "mutuality of parties is not required." *Muhammad v. Maduekwe*, No. 13 Civ. 6026 (CM), 2016 WL 829740, at *6 (S.D.N.Y. Feb. 29, 2016) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979). Therefore, "third parties unrelated to the original action can bar the litigant from relitigating that same issue in a subsequent suit." *Austin v. Downs, Rachlin & Martin*, 114 F. App'x 21, 22 (2d Cir. 2004). Accordingly, although MERS was not party to the State Action, it can assert collateral estoppel based on issues litigated during it.

had alleged physical entry, like she has here, Plaintiff must also allege that the entry was "unauthorized or unjustified," which she cannot do because U.S. Bank was authorized to foreclose and sell the Elder Ave. Property "pursuant to undisturbed orders of the court." *Id.* Although the current trespass claim is based upon an event that took place after Justice Suarez's ruling, the same issue—whether U.S. Bank was authorized to physically enter the property—is decisive in both instances. Determining that U.S. Bank trespassed on August 14, 2016 would mean that they were unauthorized to enter the Elder Ave. Property. This would destroy the rights established in the Foreclosure Action and confirmed in the State Action.

Further, Plaintiff has not shown that she lacked "a full and fair opportunity to contest the decision" that U.S. Bank was authorized to physically enter the Elder Ave. Property. *Bland*, 263 F. Supp. 2d at 551. She contested U.S. Bank's authority in the Foreclosure, State, and First Federal Actions. Therefore, Plaintiff is precluded from relitigating the trespass claim under the doctrine of collateral estoppel against the Moving Defendants.

\* \* \*

Collateral estoppel precludes the Court from adjudicating Plaintiff's fraud[18] and trespass[19] claims, and Moving Defendants' motion to dismiss those claims is granted.[20] Moreover, "[d]istrict courts in the Second Circuit are permitted to raise the issue of collateral estoppel *sua sponte*." *Gomez v. Resurgent Capital Servs., LP*, 129 F. Supp. 3d 147, 156 n.5 (S.D.N.Y. 2015) (citing *Curry v. City of Syracuse*, 316 F.3d 324, 330–31 (2d Cir. 2003)). Accordingly, to the extent Plaintiff asserts her fraud and trespass claims against non-moving Defendants, Plaintiff is collaterally estopped from relitigating those issues for the same reasons as above.

## C. Failure to State a Claim

Plaintiff claims that her civil rights were violated because Defendants failed to provide her with adequate notice of the foreclosure sale of the Elder Ave. Property. Compl. at 3. She

---

[18] Even assuming Plaintiff's fraud claims were not barred by the doctrine of collateral estoppel, Plaintiff fails to state a claim. "The elements of fraud under New York law are: [1] a misrepresentation or a material omission of fact which was false and known to be false by defendant, [2] made for the purpose of inducing the other party to rely upon it, [3] justifiable reliance of the other party on the misrepresentation or material omission, and [4] injury." *Premium Mortg. Corp. v. Equifax, Inc.*, 583 F.3d 103, 108 (2d Cir. 2009) (alterations in original) (internal quotation marks omitted). Further, "such a claim must be pleaded with particularity." *Id.* (citing Fed. R. Civ. P. 9(b)). Plaintiff has failed to meet this heightened pleading standard. Therefore, the Court would dismiss the claim against Moving Defendants and dismiss the claim *sua sponte* against LaSalle and BofA on these grounds as well.

[19] Even construing the Complaint liberally, at no time does Plaintiff allege that MERS entered the Elder Ave. Property. Therefore, even if collateral estoppel did not prevent Plaintiff from raising a trespass claim, she fails to state a claim for relief and on those grounds the Court would dismiss the claim against MERS. *Diego Beekman Mut. Hous. Ass'n Hous. Dev. Fund Copr. v. Dish Network*, No. 15. Civ. 1094 (KPF), 2016 WL 1060328, at 3\* (S.D.N.Y. Mar. 15, 2016) (quoting *Marone v. Kally*, 971 N.Y.S.2d 324, 327 (2d Dep't 2013)) ("A claim for trespass to real property requires 'an intentional entry onto the land of another without justification or permission.'"). For the same reason, Plaintiff fails to state a claim for relief against the non-moving Defendants, and the Court would dismiss the trespass claim against LaSalle and BofA on those grounds as well. Moreover, as Justice Suarez noted when he dismissed her claim in the State Action, Plaintiff has failed to allege that U.S. Bank was without justification or permission when it entered the Elder Ave. Property, and for that reason the Court would dismiss the trespass claim against U.S. Bank. Noren Delc., Ex. 12 at 4 ("[S]uch entry must be unauthorized or unjustified . . . and here entitlement to foreclosure and sale exists pursuant to undisturbed orders of the court.").

[20] Moving Defendants do not argue that Plaintiff's improper notice claim is barred by the doctrine of collateral estoppel. As the parties asserting issue preclusion, Moving Defendants bear the burden of alleging that the identical issue was previously decided. Because they failed to make any arguments concerning the improper notice claim, they have failed to meet their burden and collateral estoppel will not bar those claims.

also alleges that her "whole family suffered from harassment . . . when investors stormed the property on [August 14, 2016]." Compl. at 3. Lastly, Plaintiff alleges those same individuals "traumatiz[ed] all the tenants." Pl. Opp. at 4.

Even liberally construing the Complaint as alleging a due process violation, Plaintiff has failed to state a claim because she has not alleged any state action. *Mareno*, 421 F. Supp. 2d at 726 (noting that "[s]uch a claim can only be brought against a person acting under color of state law. . . . and it is perfectly apparent that Dime [Bank], a private business corporation, is NOT a state actor"). Further, Plaintiff's own allegations refute her claim, as she attached the notice of intent to sell the Elder Ave. Property, dated June 17, 2016, to her Complaint. Compl., Ex. B. Therefore, the Court dismisses the claim against Moving Defendants, and *sua sponte* dismisses the claim against LaSalle and BofA.

Construing the Complaint liberally, Plaintiff attempts to assert a harassment claim against those individuals who entered her property on August 14, 2016. As discussed above, it is unclear if those individuals were investors, contractors, or U.S. Bank representatives. Regardless of who they were, Plaintiff has failed to state a claim against any Defendants because civil harassment is not recognized under federal or state law. *See Carvel v. Ross*, No. 09 Civ. 0722 (LAK), 2011 WL 856283, at *11 (S.D.N.Y. Feb. 16, 2011) ("[Plaintiff] asserts claims for harassment [and] intimidation . . . . None of these are cognizable as civil causes of action under federal or New York law."), adopted in full, 2011 WL 867568 (S.D.N.Y. Mar. 11, 2011). Therefore, to the extent Plaintiff seeks damages for harassment, the claim is DISMISSED against the Moving Defendants and *sua sponte* dismissed against LaSalle and BofA.

To the extent Plaintiff's Complaint also asserts a claim for intentional infliction of emotional distress based on the actions of those individuals who "stormed the property," it also

fails. First, Plaintiff does not allege that she herself was traumatized, but rather, that "tenants" were traumatized. Even liberally construing the Complaint as asserting that she also suffered trauma from Defendants' actions, Plaintiff has not sufficiently alleged that those individuals were the Defendants. Even if they were, Plaintiff has failed to allege their conduct was "extreme and outrageous." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 157 (2d Cir. 2014) (quoting *Freihofer v. Hearst Corp.*, 480 N.E.2d 349, 356 (N.Y. 1985)) (noting that intentional infliction of emotional distress "provides a remedy for the damages that arise out of a defendant engaging in 'extreme and outrageous conduct, which so transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society.'"). Accordingly, any claim for intentional infliction of emotional distress is DISMISSED against the Moving Defendants and *sua sponte* DISMISSED against LaSalle and BofA.

## VI. CONCLUSION

For the reasons set forth above, U.S. Bank and MERS' motion to dismiss is GRANTED. The Court DISMISSES the Complaint in its entirety against all Defendants. The Clerk of Court is respectfully directed to terminate the motion, Doc. 19, and close the case.

It is SO ORDERED.

Dated:   May 4, 2017
       New York, New York

                                                   
                                Edgardo Ramos, U.S.D.J.